502 A.2d 1120

Steven M. **VOGELHUT**

v.

Nelson R. **KANDEL.**

No. 501, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Jan. 16, 1986.

Certiorari Granted April 21, 1986.

John H. Zink, III (Lawrence L. Hooper, Jr. and Cook, Howard, Downes & Tracy on brief), Towson, for appellant.

Saul Kerpelman (Nelson R. Kandel on brief), Baltimore, for appellee.

Argued Before BISHOP, ADKINS and KARWACKI, JJ.

KARWACKI, Judge.

This case arises from a dispute between two members of the Maryland Bar. The issues presented concern the validity of an agreement allegedly entered on April 11, 1980 whereby Steven M. Vogelhut, the appellant, promised to pay a portion of any fee he received for the representation of certain personal injury claimants to Nelson R. Kandel. At a bench trial in the Circuit Court for Baltimore City, Judge David Ross resolved those issues in favor of Kandel and rendered judgment in his favor against Vogelhut for $18,700.

The history of this dispute begins on August 5, 1978 when Shirley Ellis and her four minor children were injured in an automobile accident in Baltimore City. Thereafter she retained Kandel to represent her in the claim she was making against the parties who negligently caused those injuries. Kandel's fee for this representation was contingent upon a recovery by Ellis.

By January 1980, the claim on behalf of her children and Ellis had not been resolved, and she became disenchanted with Kandel's representation. Ellis made her unhappiness known to a nurse at Johns Hopkins Hospital where her children were undergoing medical treatment. That nurse suggested Vogelhut as a lawyer who could better handle the case and put Ellis in touch with him.

Vogelhut met with Ellis on January 21, 1980. At that meeting Vogelhut agreed to represent her and her minor

children in their personal injury claims. Ellis agreed that Vogelhut would be entitled to a contingent fee based upon 40 percent of the amount recovered on the claims. The same day, Vogelhut wrote Kandel as follows:

> This is to notify you that this office has been retained by Shirley Ellis to represent both her and her children who were involved in an automobile accident on August the 5th, 1978.
>
> Kindly forward all the information you have concerning this matter to this office at your earliest possible convenience.
>
> If you have any questions concerning this matter, please feel free to contact this office.

Under his signature to this letter he prepared the following postscript for Ellis's signature:

> This is to notify you that Steven M. Vogelhut, Esquire has been hired to represent both myself and my children who were involved in an automobile accident on August 5, 1978, with a Sun Papers truck.
>
> You are instructed to turn over all of the information you have concerning this accident to Mr. Vogelhut at your earliest possible convenience.

Kandel made no response to these messages until April 11, 1980. On that day he dispatched his associate, Robert H. Wolf, to Vogelhut's office. Wolf explained that his mission was to deliver Kandel's files in the Ellis case to Vogelhut and to discuss "what fee arrangements he [Vogelhut] was going to make with Mr. Kandel as far as what Mr. Kandel's portion of the fee would be eventually if the case was settled or went to court." Wolf testified that Vogelhut, at that meeting, agreed to pay 25 percent of any fee he received to Kandel. Vogelhut's testimony contradicted Wolf's recollection. He flatly denied any such agreement. On April 14, 1980, however, Wolf wrote Vogelhut stating:

> Re: Shirley Ellis and Children
>     D/A 8/5/78

This letter will confirm our conversation in your office on Friday, April 11, 1980. We agreed at that time that twenty-five percent (25%) of the legal fee will be paid to Nelson R. Kandel in addition to the expenses and costs paid by our office.

Thank you for your time and cooperation in this matter. Please return our files once this matter has been settled.

Vogelhut never replied to that letter.

On the day set for the trial of the suit Ellis filed against the tort-feasors responsible for the injuries occasioned by the August 5, 1978 accident, Vogelhut concluded a settlement of Ellis's claims for $187,000. Under his contingent fee arrangement Vogelhut received $74,800 for his services. Soon thereafter, on March 21, 1983, Vogelhut wrote Wolf:

Re: Shirley Ellis, et al. vs. A.S. Abell Company, et al.

I phoned your office on March 17, 1983 to advise you that I had finally resolved captioned claims. The secretary said you were in court and I requested her to have you call me, but as of this date I have not heard from you.

It is my understanding that your office may be entitled to compensation on a quantum meruit basis for legal services rendered prior to the termination of your representation.

As you are aware, Shirley Ellis, et al, must give their consent to settle any possible claim your office may have in this matter. Therefore, please submit a detailed listing showing your hourly rate for legal services rendered, dates and time when such services were rendered and the nature of such services in order that Shirley Ellis, et al, may approve same.

In the event you should have any questions concerning this letter, feel free to contact me. Your prompt attention is appreciated.

On March 23, 1983 Kandel replied to that letter enclosing a copy of Wolf's letter to Vogelhut of April 14, 1980 and demanding 25 percent of the fee received by Vogelhut in the case.

Judge Ross, resolving conflicting testimony, concluded that Vogelhut on April 11, 1980 had promised to pay 25 percent of any fee he recovered in the Ellis case to Kandel. Vogelhut, acknowledging the relative immunity of that factual determination from our review under Rule 1086, raises these issues in his appeal:

   I.  In the absence of authority from Ellis, could Vogelhut agree to pay a portion of the fee he might receive from Ellis to Kandel;

   II.  Was the agreement supported by legal consideration; and

   III.  Did the agreement violate the Lawyers Code of Professional Responsibility, and was it therefore unenforceable as against public policy?

I.

In this argument the appellant casts the instant dispute as one between Ellis and Kandel. He asserts that Kandel's claim for a fee following his discharge was against Ellis, and that when he negotiated the agreement of April 11, 1980, he did so on behalf of his disclosed principal, Ellis. He cites the well settled rule that an attorney has no implied authority to settle his client's case and suggests that since he did not have Ellis's consent to the agreement it was unenforceable. *Accrocco v. Splawn,* 264 Md. 527, 287 A.2d 275 (1972); *Litzenberg v. Litzenberg,* 57 Md.App. 303, 469 A.2d 1279 (1984); *Kinkaid v. Cessna,* 49 Md.App. 18, 430 A.2d 88 (1981). The principles he cites are sound, but the appellant's premise is faulty.

The existence of an agency relationship under the evidence in this case was a determination reserved to the fact finder. *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 119 A.2d 423 (1956). Since Kandel had been employed under a contingent fee arrangement, after he was discharged by Ellis, his claim against her was limited to any fee due him for the reasonable value of the services he had rendered to her. *Palmer v. Brown,* 184 Md. 309, 40 A.2d 514 (1944); *Boyd v. Johnson,* 145 Md. 385, 125 A. 697 (1924); *Western Union Telegraph Co. v. Semmes,* 73 Md.

9, 20 A. 127 (1890). Judge Ross found as a fact that it was not that claim which was the subject of the negotiations on April 11, 1980. Rather, he concluded that the subject of the discussion was the price which Vogelhut was willing to pay for Kandel's files in the Ellis case. Since there was evidence to support this finding, we will not disturb that factual conclusion of the trial judge. Rule 1086.

## II.

■ It is well settled that forebearance to exercise a legal right is sufficient consideration to support a promise. *Beall v. Beall,* 291 Md. 224, 230, 434 A.2d 1015 (1981). When Kandel was fired by Ellis, he was entitled to be paid for the reasonable value of the services he had performed as her attorney. Incidental to this claim, Kandel possessed a retaining lien on the files his labor had produced. *Diamond v. Diamond,* 298 Md. 24, 35–36, 467 A.2d 510 (1983); *Attorney Grievance Comm. v. McIntire,* 286 Md. 87, 96, 405 A.2d 273 (1979); *Campen v. Talbott Bank,* 271 Md. 610, 614, 319 A.2d 125 (1974); *Ashman v. Schecter,* 196 Md. 168, 76 A.2d 139 (1950). In *Ashman,* the Court of Appeals explained that a retaining lien covers:

> [A]ll papers, securities and money belonging to his client which comes into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid. As the name implies, it is dependent upon possession. It is generally speaking a passive lien and cannot be actively enforced either at law or equity.

196 Md. at 173–74, 76 A.2d 139.

■ A limitation on this right to exert a retaining lien may be imposed by Canon 1 and DR 1–102(A)(5) [1] of the

---

1.
                    CANON I
   A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession
   DR 1–102 Misconduct.
   (A) A lawyer shall not:
      (1) Violate a Disciplinary Rule.

Code of Professional Responsibility. The Maryland State Bar Association's Committee on Ethics has opined:

> Because we view the only limitation on the exercise of a retaining lien to be the administration of justice, it is our opinion that the only documents or other tangible things which must be provided to the client are those without which the client cannot prosecute or defend his position or obtain his goal, which are not otherwise available from a source other than the lienor attorney, and for which the client would suffer serious disadvantages if the processes of the court were used to obtain the material (for example, if confidential materials were made available to the opposing party at a deposition of the lienor attorney). In any other case the former client may properly be required to obtain the documents from the other source. This is true despite the fact that there may be considerable additional difficulties or expense in obtaining the documents or other materials from the other source.
>
> We also hasten to point out that even when documentation or other materials are subject to a retaining lien they must be made available for review by the former client in response to a validly issued subpoena.

MSBA Formal Opinion Docket No. 81–33 (Feb. 24, 1981). There is no suggestion that Kandel's files contained any documents or tangible things within the purview of that ethics opinion. Kandel's possessory retaining lien was surrendered by the delivery of his files in the Ellis case to Vogelhut. In surrendering his right to exert that lien, he

(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

suffered a legal detriment furnishing the necessary consideration to support Vogelhut's promise.

## III.

The appellant urges that the enforcement of his promise would violate the public policy of this State. He views the agreement he entered into with the appellee as one violating the Code of Professional Responsibility, since it constituted unethical fee splitting in violation of DR 2–107 and resulted in an excessive fee prohibited by DR 2–106 to the appellee considering his legal services to Ellis. He asserts that since the Code has been adopted by the Court of Appeals in Rule 1230 to regulate the conduct of members of the Maryland Bar, any agreement entered in violation of the Code violates the public policy of the State and should not be enforced by the Maryland Courts. His logic is flawed by his incorrect interpretation of the disciplinary rules on which it is based.

DR 2–107 provides:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.

A plain reading of this disciplinary rule discloses that it regulates the division of fees between lawyers who are *concurrently* representing a client in the same legal matter. Fee splitting following a referral is the focus. Protection of a client from unreasonable fees resulting from a

referral is the aim of the rule. Code of Professional Responsibility, EC 2–16 through EC 2–21. In the case *sub judice* we are not presented with a situation involving client referral. To the contrary, the relationship of Kandel and Vogelhut was anything but cooperative. DR 2–107 is simply immaterial to their relationship.

In *Krajewski v. Klawon,* 84 Mich.App. 532, 270 N.W.2d 9 (1978), the Court of Appeals of Michigan dealt with this issue. There, an attorney was retained on a contingent fee basis. After he had represented the client for over a year, he was discharged by the client and replaced by another lawyer. The successor attorney agreed to pay the discharged attorney a portion of the fee he ultimately received. In exchange, the discharged attorney turned over the files which he had prepared in the case. Following an award of $45,000 in the personal injury case, disharmony ensued between the lawyers. The successor attorney raised DR 2–107 as a defense to the enforcement of the fee agreement. The court instructed:

> [The successor attorney's] argument that DR 2–107 prohibits attorneys from splitting fees without regard to services performed is beside the point here. Plaintiffs had hired [discharged attorney] and, therefore, were on notice that they would be liable for fees incurred while so employed.... DR 2–107 was formulated to prohibit brokering; to protect a client from clandestine payment and employment; to prevent aggrandizement of fees. We are not faced with that situation here.

*Krajewski v. Klawon,* 270 N.W.2d at 11–12.

Similarly, in *Kuhn, Collins & Rash v. Reynolds,* 614 S.W.2d 854 (Tex.Civ.App.1981), a discharged attorney brought suit against the law firm which replaced him to enforce a fee agreement. In that case, as in the instant case, the client chose to go to the successor firm after he had contracted with the first attorney on a contingent basis and then discharged him. Thereafter, a fee agreement was negotiated between the attorneys. The Court concluded that the fee agreement was in no manner violative of DR

2–107. *See also, Fitzgibbon v. Carey,* 70 Or.App. 127, 688 P.2d 1367, 1374 (1984), where it observed:

DR 2–107 is intended to prevent forwarding fee agreements and their attendant evils. An attorney is not entitled to a division of fees for "services performed and responsibility assumed" when that attorney does nothing but refer a fee-generating client to another attorney without any other actual participation in or handling of the case.

DR 2–106 prohibits lawyers from charging clients excessive fees. As we observed above, despite the appellant's attempts to cast this dispute as one between lawyer and client, that is simply not the case. It involves one lawyer's attempt to enforce an agreement he made with another member of the bar. At the time Vogelhut promised to share his ultimate fee in the Ellis cases with Kandel in exchange for the files that Kandel had accumulated in his work on those claims, Ellis's liability for the contingent fee to Vogelhut had already been settled. The Vogelhut-Kandel agreement in no way affected the fee which Ellis had contracted to pay. DR 2–106 does not apply under these circumstances.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.