606 So.2d 466 (1992)
ROBERT A. SHUPACK, P.A., Appellant,
v.
Herbert J. MARCUS, T. Patrick Ford, Jr., Individually, and/or T. Patrick Ford, Jr., P.A., Appellees.
No. 91-568.
District Court of Appeal of Florida, Third District.
October 13, 1992.
Rehearing Denied October 13, 1992.
Lawrence B. Friedman, Miami, for appellant.
Badiak, Will & Kallen and John D. Kallen, North Miami, for appellee Herbert J. Marcus.
Thomas F. Martin, South Miami, for appellee T. Patrick Ford, Jr., individually, and/or T. Patrick Ford, Jr., P.A.
Before HUBBART, FERGUSON and GODERICH, JJ.

CORRECTED OPINION
PER CURIAM.
The plaintiff, Robert A. Shupack, P.A., appeals the entry of final summary judgment in favor of the defendants, T. Patrick Ford, Jr., individually and/or T. Patrick Ford, Jr., P.A. [collectively referred to as Ford] and Herbert J. Marcus, and the denial of his motion for rehearing. We affirm.
On March 28, 1978, Judy and Lester Gunn [the clients] consulted with Marcus, an attorney, regarding a possible medical malpractice action against Jackson Memorial Hospital [JMH]. At that time, Marcus was employed by the plaintiff. The clients signed a contingency fee agreement which was executed by Marcus on behalf of the plaintiff. On March 31, 1978, the plaintiff sent notices of the medical malpractice claim against JMH to the various governmental agencies as required by law.
*467 On April 11, 1978, the plaintiff and Marcus referred the clients' case to Ford. The three attorneys agreed that each would receive one-third of the attorney's fee. On April 13, 1978, the clients were advised of the fee sharing arrangement.
In early June, 1978, Marcus resigned and opened his own law practice. On June 14, 1978, the clients discharged the plaintiff. Thereafter, the clients signed a new contingency fee agreement with Marcus and Ford. On December 13, 1978, Marcus and Ford filed a complaint on behalf of the clients.
The case went to trial and resulted in a defense verdict on June 14, 1990. An appeal was filed, and on August 12, 1990, the case was settled. The trial court approved an award of $38,000.00 for attorneys' fees. The fees were distributed as follows: $15,200.00 to Ford, $15,200.00 to Marcus, and $7,600.00 to the appellate counsel.
The plaintiff did not file a claim of lien for fees or costs incurred on behalf of the clients. The plaintiff, however, filed an action against Marcus on December 28, 1978. On April 6, 1983, the plaintiff amended its complaint adding Ford. The amended complaint set forth several causes of action, including an action seeking to declare that the fee sharing agreement is valid and enforceable.
The defendants filed a motion for summary judgment. At that point, the only remaining issue was the validity and enforceability of the fee sharing agreement. The trial court granted the motion and entered final judgment in favor of Marcus and Ford. Thereafter, the plaintiff filed a motion for rehearing and a motion to amend the amended complaint. Both motions were denied. The plaintiff appeals.
At the time the parties entered into the fee sharing agreement, such agreements were governed by Disciplinary Rule 2-107, Florida Bar Code of Professional Responsibility.[1] Once the clients discharged the plaintiff and signed a new contingency fee agreement with Ford and Marcus, the fee sharing agreement failed to meet the requirements of Disciplinary Rule 2-107, and was, therefore, invalid.[2]See Dade County v. Goldstein, 384 So.2d 183, 189 (Fla. 3d DCA 1980) (lead counsel may compensate co-counsel for legal services performed if done in accordance with DR 2-107); Bell v. Cristol, 373 So.2d 42 (Fla. 3d DCA 1979) (legal fees may be divided if agreement met the requirements of DR 2-107). See generally, Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775 (Fla. 3d DCA) (agreement to employ attorney was void where agreement violated Section 877.02(1), Florida Statute (1981)), rev. denied, 492 So.2d 1334 (Fla. 1986).
Accordingly, we affirm.
FERGUSON, Judge (dissenting).
I agree that the appellant attorney is entitled to compensation for his services. I *468 disagree, however, that the clients, whose recovery has already been taxed the contracted-for fee, should be responsible for paying the appellant a reasonable fee.
In my view, DR2-107 of the Code of Professional Responsibility was not violated.[3] Marcus was an employee in the office of appellant Shupack on terms which entitled Shupack to fifty percent of the fees generated in the case in question. On the Gunn malpractice case, Shupack and Marcus entered into a fee-sharing agreement with appellee Ford whereby each lawyer would receive a one-third share of fees obtained. The fee-sharing agreement was valid under the Florida Bar Code Of Professional Responsibility because it was with the knowledge and approval of the clients. Further, it was agreed that Marcus would be permitted to work on the case in the office of Ford.
Marcus resigned from Shupack's office to become associated with Ford while working on the Gunn case. In support of his motion for summary judgment, Marcus filed a letter, purportedly executed by the Gunns, terminating Shupack as counsel. The legal theory relied upon by the appellees is that sharing a fee with Shupack would have been unethical after he was discharged by the Gunns, unless there was a new fee-sharing agreement approved by the Gunns.
A summary judgment against the plaintiff was incorrect because, even if the legal theory supported a summary judgment, the hearsay letter, purportedly written by the Gunns, could not factually support the judgment. More importantly, the subsequent termination of the client-attorney relationship between Shupack and the Gunns could not retrospectively invalidate a fee entitlement based on the initial employment contract or the valid-when-executed fee-sharing arrangement of the parties.
A broader principle of equity, applied in fee-splitting cases, would preclude the result reached by the majority. "Disciplinary Rule 2-107 should not be too readily construed as a license for attorneys to break a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics." Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457 (Tex. App. 1981). It is all too obvious that the actions of the appellees had a single intended purpose  to deprive Shupack of a share of the attorneys' fees.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEIN and GODERICH, JJ.

ON MOTION FOR REHEARING
PER CURIAM.
The motion for rehearing is considered as directed to the corrected opinion and is denied.
HUBBART and GODERICH, JJ., concur.
FERGUSON, J., dissents.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
Motion denied.
BARKDULL, HUBBART, NESBITT, BASKIN, COPE, GERSTEN and GODERICH, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
It is of controlling significance that the clients' interests are not involved at all in this case. They have fully paid the contingency fee on the recovery, and no one, least of all the appellant Shupack, claims anything more from them. As in Stabinski, Funt & De Oliveira, P.A. v. Law Offices of Frank H. Alvarez, 490 So.2d 159 (Fla. 3d DCA 1986), review denied, 500 So.2d 545 (Fla. 1986), therefore, the sole issue is whether Shupack is entitled to any *469 part of the fees already paid the other lawyers.
In my judgment, this case is therefore properly approached as if it were a simple action for breach of contract. In return for the use of his office, a salary, and other services, Marcus agreed to pay Shupack one third of the fees earned on cases secured during his employment. There is nothing wrong  as a matter of legal ethics or public policy  with this very common type of agreement. See Kaufman, P.A. v. Meadows, P.A., 600 So.2d 1208 (Fla. 1st DCA 1992); Vogelhut v. Kandel, 66 Md. App. 170, 502 A.2d 1120 (1986), aff'd, 308 Md. 183, 517 A.2d 1092 (1986); Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457 (Tex. App. 1981). And there is no reason to refuse to enforce it in this case.
To permit Marcus, as the panel does, to renege on his bargain because of a supposed violation of Disciplinary Rule 2-107 is to convert what was meant as a client's shield against the assertion of a claim for fees without services being rendered, into a sword to permit an unjustifiable breach of an otherwise binding obligation between two persons who happen to be lawyers. This is wrong. As the First District very recently held in a decision which may well be in direct conflict with the panel in this case:
We are not convinced that the facts presented here reveal an ethical violation, but, even assuming that the fee-splitting contract divides the fee between the parties in a manner inconsistent with Rule 4-1.5, Davis may not rely upon the rule to avoid its contractual obligations. We note that the preamble to Chapter 4 entitled, "Rules of Professional Conduct," provides in relevant part:
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.
(emphasis added). We have interpreted this language to mean that it is error to use an ethical rule as a basis to invalidate or render void a provision in a private contract between two parties. See Lee v. Florida Dept. of Ins. & Treasurer, 586 So.2d 1185, 1188 (Fla. 1st DCA 1991) ("To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect."). Accordingly, we conclude that it was error to rely upon Rule 4-1.5 as a basis for relieving Davis of the obligations which it freely and voluntarily assumed.
Kaufman, 600 So.2d at 1211; accord Baron, 623 S.W.2d at 462 ("Disciplinary Rule 2-107 should not be too readily construed as a license for attorneys to breach a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics."); Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. Snyder, 601 A.2d 1056, 1058-59 (Del.Super. 1990) (fee division agreement valid and enforceable when entered into by partners of same firm); Vogelhut, 66 Md. App. at 178-79, 502 A.2d at 1124-25 (fee division agreement did not violate prohibition against unethical fee splitting where lawyers not concurrently representing client and agreement in no way affected fee client contracted to pay); Watson v. Pietranton, 178 W. Va. 799, 364 S.E.2d 812, 816 (1987) (fee-splitting agreement enforceable between law firms even *470 if violated disciplinary rule). See Frates v. Nichols, 167 So.2d 77 (Fla. 3d DCA 1964).
It is ironic indeed that the Code of Professional Responsibility  which is designed to raise the professionalism of the practice  has been employed to lower the responsibilities of attorneys toward each other below even the "morals of the marketplace." Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). I think that a decision which, like the majority's, rejects a lawful claim on such a ground is of genuinely "exceptional importance" so as to justify its reconsideration en banc. Fla.R.App.P. 9.331(a). On the merits, I would hold that Shupack is entitled to receive just what Marcus promised, one third of the latter's fee in the underlying case.
FERGUSON, JORGENSON and LEVY, JJ., concur.
NOTES
[1] Rule DR 2-107 reads as follows:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
(2) The division is made in proportion to the services performed and responsibility assumed by each, provided that in case of the employment of an attorney for a contingent fee as defined in DR 2-106(E), a division of such fee may only be made between the attorneys involved when:
(a) The client consents in writing signed by him to employment of the other lawyer which writing shall fully disclose that a division of fees will be made and the basis upon which the division of fees will be made.
(b) Each lawyer agrees to assume the same legal responsibility to the client for the performance of the services in question as if he were a partner of the other attorney involved.
(c) Each lawyer involved shall be available to the client for consultation concerning the case.
(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.
[2] We are mindful of the cases from other jurisdictions cited by the plaintiff. However, we find that these cases are factually distinguishable.
[3] DR2-107 has been replaced by rule 4-1.5(F)(4)(d) of the Rules Regulating the Florida Bar.