2012 UT 53

**In the Matter of the DISCIPLINE OF Franklin Richard BRUSSOW.**

**Franklin Richard Brussow, Petitioner,**

v.

**Utah State Bar, Respondent.**

No. 20100206.

Supreme Court of Utah.

Aug. 28, 2012.

Franklin Richard Brussow, Salt Lake City, pro se.

Billy L. Walker, Adam C. Bevis, Salt Lake City, for respondent.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 Attorney Franklin Brussow appeals from the decision of the Utah State Bar Ethics and Discipline Committee (Committee) to sanction him by public reprimand for violating rules 1.15(d) and 1.16(d) of the Utah Rules of Professional Conduct.[1] After conducting a hearing, a screening panel of the Ethics and Discipline Committee (Screening Panel) concluded that Mr. Brussow had violated these rules and recommended that he be publicly reprimanded. Mr. Brussow filed an exception and requested a hearing to challenge the Screening Panel's conclusion. After holding a hearing, the Chair of the Ethics and Discipline Committee (Chair) denied the exception and sustained the recommendation of the Screening Panel.

¶ 2 We uphold the Committee's conclusion that Mr. Brussow violated rule 1.15(d) by failing to provide his client with an accounting of the fees she had paid in advance. But because there is no indication that his failure to provide the accounting caused any injury or interference with a legal proceeding, we conclude that an admonition was the appro-

---

**1.** The Committee also concluded that · Mr. Brussow should be publicly reprimanded for violating rule 8.4(a) of the Utah Rules of Professional Conduct. Rule 8.4(a) states that "[i]t is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct." Although Mr. Brussow does not specifically challenge the Committee's conclusions that he violated rule 8.4(a) and should be publicly sanctioned for this violation, we note that we are troubled by the practice of sanctioning attorneys for violating rule 8.4(a) based solely on their violations of other rules. In this application of rule 8.4(a), it seems that the rule amounts to no more than a "piling on," in that an attorney will never be sanctioned for only one rule violation. We question the fairness of sanctioning attorneys for violating rule 8.4(a) every time they violate any other Rule of Professional Conduct. Accordingly, by this footnote we direct our rules committee to consider this issue, and in this case, we decline to impose any sanction based on a violation of rule 8.4(a).

priate sanction for this violation. We also uphold the Committee's conclusion that Mr. Brussow violated rule 1.16(d) by failing to provide his client's file upon her request. Because his client was injured by being forced to spend time and money attempting to retrieve or re-create her file, we agree that a public reprimand was an appropriate sanction for this violation.

## BACKGROUND

¶ 3 Mr. Brussow represented Anita Langley in a domestic relations proceeding involving disputes with her ex-husband over child support, child custody, and parent time. On August 2, 2007, Mr. Brussow executed a fee agreement with Ms. Langley, stating that she would pay him a retainer of $3,750.00 toward twenty-five hours of service billed at the rate of $150.00 per hour. Following the execution of the fee agreement, Mr. Brussow represented Ms. Langley for about a year. But during this time, Mr. Brussow sent Ms. Langley only one billing statement totaling $337.50 for the services he performed. After sending this billing statement, he periodically requested and received and received additional payments from Ms. Langley in order to continue his services.

¶ 4 Mr. Brussow's representation of Ms. Langley culminated in a four-day trial in May and June of 2008. After the trial, Ms. Langley's current husband visited Mr. Brussow's office and requested transcripts of depositions taken in the course of the representation. Mr. Brussow gave Ms. Langley's husband the transcripts, and he maintains that her husband agreed to pay the court reporter's fees for the transcripts. But neither Ms. Langley nor her husband paid the fees, and Mr. Brussow eventually paid them himself.

¶ 5 Ms. Langley reports that she terminated Mr. Brussow's representation in August 2008, and subsequently hired a new attorney to replace him. Ms. Langley further states that she requested her file in September, but

that Mr. Brussow ignored her request. Accordingly, her new attorney called Mr. Brussow to request the file. The new attorney also wrote to Mr. Brussow in early September, stating that Mr. Brussow was no longer Ms. Langley's attorney, requesting that Mr. Brussow produce Ms. Langley's file, and reporting that he (the new attorney) had a "desperate need" of the file in order to proceed with the case. Nonetheless, Mr. Brussow refused to provide the file until Ms. Langley paid the fees for the deposition transcripts.

¶ 6 In October 2008, Ms. Langley filed a complaint with the Utah State Bar Office of Professional Conduct (OPC), claiming that Mr. Brussow had refused to provide her client file and that he had not provided regular billing statements or an accounting of the fees that she had paid. Ms. Langley also submitted an application to the Utah State Bar's Fee Arbitration and Mediation program with her complaint. In response, Mr. Brussow ultimately provided Ms. Langley with her file, but not until December 29, 2008.

¶ 7 In September 2009, the Screening Panel held a hearing regarding Ms. Langley's complaint, at which both Mr. Brussow and Ms. Langley testified. Ms. Langley reported that Mr. Brussow did not provide regular billing statements, but that she had paid him $17,500 in legal fees over the course of the year that he had represented her.[2] Additionally, she claimed that she had requested an accounting of the fees she had paid Mr. Brussow on multiple occasions, but that he had never provided her with such an accounting.

¶ 8 Mr. Brussow testified that, after sending Ms. Langley an initial billing statement, he "got swamped with her case and the other ones" and had not sent any other billing statements. Nonetheless, he denied that Ms. Langley had requested an accounting, and he maintained that Ms. Langley had paid less than she claimed to have paid, although he

2. In her informal complaint, Ms. Langley initially stated that she had paid Mr. Brussow $14,500, but at the hearing before the Screening Panel she testified that she had paid $17,500 in legal fees and expenses. At any rate, Mr. Brussow did not

put forth any evidence to refute her claims, and the Screening Panel found that "Mr. Brussow could not account for $17,500 in fees and did not know how much Ms. Langley had paid."

was unable to provide records of her payments to support his claim. He also indicated that Ms. Langley owed him additional payments for his services, but said that when it became obvious that she would not be cooperative about paying, he had not bothered calculating what she had paid or the total hours of work he had performed on her behalf.

¶ 9 Mr. Brussow acknowledged that he had received requests for Ms. Langley's file from Ms. Langley and her new attorney, but he argued that he was entitled to retain the file because Ms. Langley had failed to pay the fees for the deposition transcripts. He also argued that he had functionally provided the file to Ms. Langley by sending her copies of his work as he performed it. Finally, he claimed that retaining the file did not cause any harm to Ms. Langley.

¶ 10 After the hearing, the Screening Panel issued a written recommendation, which concluded that Mr. Brussow had violated rule 1.15(d),[3] 1.16(d),[4] and 8.4(a)[5] of the Rules of Professional Conduct and recommended that he be publicly reprimanded for these violations. Mr. Brussow filed an exception to this recommendation and requested a hearing before the Chair.[6]

¶ 11 The Chair held a hearing on Mr. Brussow's exception in January 2010. Mr. Brussow and an attorney from the OPC were present at the hearing, but Ms. Langley was not. At that hearing, Mr. Brussow conceded that Ms. Langley had requested an accounting "when the Bar got involved." The OPC claims that "[t]he Bar's involvement that [Mr.] Brussow references was [Ms.] Lang-

ley's application to the Utah State Bar's Fee Arbitration and Mediation program, which she contacted in addition to her complaint with the OPC." The OPC explains that this means that Mr. Brussow admitted that he had been asked for an accounting no later than December 4, 2008, and by the date of the [e]xception [h]earing on January 19, 2010 he still had not provided an accounting to his former client."

¶ 12 Ultimately, the Chair concluded that Mr. Brussow had failed to satisfy his burden of showing that the Screening Panel's recommendation should be overturned. Accordingly, the Chair issued a ruling denying the exception and sustaining the recommendation of the Screening Panel, and Mr. Brussow appealed to this court. We have jurisdiction to hear this appeal under article VIII, section 4 of the Utah Constitution[7] and rule 14–510(f)(1) of the Supreme Court Rules of Professional Practice.[8]

## STANDARD OF REVIEW

¶ 13 When an attorney appeals a final committee determination "[of admonition or public reprimand," the attorney "shall have the burden of demonstrating that the Committee action was ... not supported by substantial evidence," or that the action was "[a]n abuse of discretion" ... "[a]rbitrary or capricious," or contrary to the Rules of Professional Practice.[9] In matters of attorney discipline, we review "findings of facts under the clearly erroneous standard" while "reserv[ing] the right to draw different infer-

3. UTAH R. PROF'L CONDUCT 1.15(d) ("[A] lawyer shall promptly deliver to the client ... any funds or other property that the client ... is entitled to receive and, upon request by the client ... shall promptly render a full accounting regarding such property.").

4. *Id.* 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests....").

5. *Id.* 8.4(a) ("It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct....").

6. *See* SUP.CT. R. PROF'L PRACTICE 14–510(c).

7. UTAH CONST. art. VIII, § 4 ("The Supreme Court by rule shall govern the practice of law, including ... the conduct and discipline of persons admitted to practice law.").

8. SUP.CT. R. PROF'L PRACTICE 14–510(f)(1) ("Within 30 days after service by OPC of a final, written determination of the Committee chair [of an admonition or a public reprimand in a matter for which exceptions have been filed], ... respondent may file a request for review with the Supreme Court seeking reversal or modification of the final determination by the Committee.").

9. SUP CT. R. PROF'L PRACTICE 14–510(f)(5)(1), (5)(A)–(D).

ences." [10] But when we review the sanction imposed, "our constitutional responsibility requires us to make an independent determination as to its correctness." [11]

## ANALYSIS

 ¶ 14 Mr. Brussow objects to the Committee's conclusions that he violated rules 1.15(d) and 1.16(d) of the Utah Rules of Professional Conduct and that he should be publicly reprimanded for these violations. We first consider whether Mr. Brussow violated rule 1.15(d) by failing to provide, upon Ms. Langley's request an accounting of the fees she had paid, and whether a public reprimand was the appropriate sanction for this violation. We then consider whether Mr. Brussow violated rule 1.16(d) by failing to provide Ms. Langley with her file upon her request, and whether a public reprimand was the appropriate sanction for this violation. In conducting this analysis, "we interpret a court rule in accordance with its plain meaning," and "[o]ur objective in interpreting a court rule is to give effect to the intent of the body that promulgated it." [12]

## I. BECAUSE MS. LANGLEY PAID FEES IN ADVANCE AND MR. BRUSSOW FAILED TO PROVIDE HER WITH AN ACCOUNTING OF THOSE FEES, THE COMMITTEE PROPERLY FOUND THAT HE VIOLATED RULE 1.15(d), BUT BECAUSE HIS CONDUCT DID NOT CAUSE ANY INJURY, ADMONITION IS THE APPROPRIATE SANCTION

### A. Because Mr. Brussow Had an Obligation to Comply with Ms. Langley's Request for an Accounting of the Fees She Paid Him in Advance, the Committee Correctly Concluded that He Violated Rule 1.15(d)

¶ 15 Rule 1.15(d) of the Utah Rules of Professional Conduct states that "a lawyer

shall promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive and, upon request by the client . . . shall promptly render a full accounting regarding such property." This rule applies to funds or property that the attorney is holding on behalf of the client and that the client would be entitled to receive upon the termination of the representation. For instance, a client would be entitled to receive a settlement paid by a third party to an attorney on the client's behalf or unearned fees paid by the client in advance of an attorney's services. And under the plain language of rule 1.15(d), "a lawyer shall promptly deliver [such funds or property] to the client," and "shall promptly render a full accounting" of such funds or property upon the client's request.

 ¶ 16 Despite this language, the OPC claims that this rule requires attorneys to account for "any funds or property relating to the client." Thus, the OPC contends that after Ms. Langley "paid him *any* amount," Mr. Brussow was in violation of the rule when Ms. Langley requested an accounting and Mr. Brussow failed to provide her with one. But the language of rule 1.15(d) does not support the OPC's broad interpretation of this rule. The rule refers only to "any funds or other property that the client . . . is *entitled to receive.*" [13] Rule 1.15(d) does not require an attorney to provide an accounting of property and funds the client is *not* entitled to receive. Thus, rule 1.15(d) does not require an attorney to provide an accounting of payments made by a client for services after they were performed because the attorney has already earned these fees. Therefore, the client would not be entitled to receive any portion of such funds from the attorney upon the termination of the representation.

---

10. *In re Discipline of Ince,* 957 P.2d 1233, 1236 (Utah 1998).

11. *Id.*

12. *State v. Rothlisberger,* 2006 UT 49, 115, 147 P.3d 1176. We note that we are, of course, the body that promulgated the Utah Rules of Professional Practice. *See* UTAH CONST. art. VIII, § 4

("The Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law.").

13. UTAH R. PROF'L CONDUCT 1.15(d) (emphasis added).

¶ 17 Accordingly, rule 1.15(d) would not apply if Ms. Langley was seeking an accounting for fees that she had paid Mr. Brussow *after* he had performed services on her behalf because her request for an accounting would not concern funds that she would be entitled to receive.[14] Rule 1.15(d) could apply, however, if Ms. Langley was seeking an accounting for funds she had paid Mr. Brussow *prior* to his performance of services on her behalf because, upon termination of the representation, Ms. Langley would be entitled to receive funds that she had paid but that Mr. Brussow had not yet earned.

¶ 18 But Mr. Brussow does not argue that Ms. Langley is only seeking an accounting for funds that she paid after services were rendered. Indeed, Mr. Brussow concedes that Ms. Langley paid him prior to his performance of services. She paid Mr. Brussow an initial retainer of $3,750. And Mr. Brussow sent Ms. Langley only one bill, which was for $337.50. Thus, Mr. Brussow has not accounted for the remainder of the retainer. Further, because Mr. Brussow periodically demanded payments from Ms. Langley without providing Ms. Langley with billing statements, it is not clear whether the fees Ms. Langley paid over time had been earned by Mr. Brussow at the time they were paid or if they were paid in advance of further services. If these were advance payments and any portion was unearned by Mr. Brussow upon the termination of his representation of Ms. Langley, she would be entitled to have such funds returned to her. But Mr. Brussow has not accounted for these funds either. And in his brief and at oral argument, Mr. Brussow admits that he should have provided Ms. Langley with an accounting upon her request.

¶ 19 Although Mr. Brussow asserts that Ms. Langley still owes him for services performed on her behalf, because Mr. Brussow received an advance retainer and subsequent payments from Ms. Langley and did not send billing statements showing whether these payments had been earned, it is not clear whether Mr. Brussow has earned all the fees that he received from Ms. Langley. Accordingly, rule 1.15(d) applies to Ms. Langley's request for an accounting. And because Mr. Brussow did not provide Ms. Langley with an accounting upon her request, we conclude that he violated rule 1.15(d).

B. *Because Mr. Brussow's Failure to Provide an Accounting Did Not Cause Any Injury or Interference with a Legal Proceeding, the Proper Sanction for His Violation of Rule 1.15(d) Was an Admonition*

¶ 20 Rule 14–604 of the Supreme Court Rules of Professional Practice provides standards for imposing lawyer sanctions. The presumptive sanction for negligent attorney misconduct is either a reprimand or an admonition. A reprimand is the presumptive sanction if the conduct "cause[d] injury . . . [or] interference with a legal proceeding,"[15] while an admonition is the presumptive sanction if the attorney's conduct "cause[d] little or no injury" but "expose[d] a party, the public, or the legal system to potential injury or cause[d] potential interference with a legal proceeding."[16]

¶ 21 In its brief, the OPC does not contend that Mr. Brussow harmed Ms. Langley by failing to provide an accounting. Further, the Screening Panel's written recommendation explained only that Mr. Brussow violated rule 1.15(d) by failing to provide Ms. Langley with an accounting; it did not discuss any way in which this failure caused injury or interference with a legal proceeding. Similarly, in his ruling, the Chair notes only that "[t]here is substantial evidence to support the Screening Panel's determination that [Mr.] Brussow violated [r]ule 1.15(d)," without discussing whether there is any evidence

---

14. Regardless of whether a client paid following the performance of services or in advance, if a client requests an accounting, rule 1.4(a) of the Utah Rules of Professional Conduct provides that an attorney must "promptly comply with reasonable requests for information." UTAH R. PROF'L CONDUCT 1.14(a)(4). But in this case, Mr. Brussow was never charged with a violation of rule

1.4(a), so we do not consider whether his conduct might have violated this rule.

15. SUP.CT. R. PROF'L PRACTICE 14–605(c)(1).

16. *Id.* 14–605(d)(1).

of injury or interference with a legal proceeding as a result of this violation.

■ ¶ 22 We see no way in which Mr. Brussow caused any injury or interference with a legal proceeding by failing to provide Ms. Langley with an accounting upon her request. Indeed, if Mr. Brussow's assertion that Ms. Langley still owes him for services rendered on her behalf is correct,[17] his failure to provide an accounting only delayed Ms. Langley's obligation to pay additional fees. Accordingly, we conclude that an admonition, rather than a reprimand, is the proper sanction for Mr. Brussow's violation of rule 1.15(d).

## II. BECAUSE RULE 1.16(d) REQUIRES AN ATTORNEY TO PROVIDE A CLIENT'S FILE UPON THE CLIENT'S REQUEST, THE COMMITTEE CORRECTLY FOUND THAT MR. BRUSSOW VIOLATED THIS RULE, AND BECAUSE MS. LANGLEY WAS HARMED BY MR. BRUSSOW'S CONDUCT, A PUBLIC REPRIMAND IS THE APPROPRIATE SANCTION

### A. Because Rule 1.16(d) Requires Attorneys to Provide Clients with Their Files upon Request, Mr. Brussow's Failure to Provide Ms. Langley with Her File Violated the Rule

¶ 23 Rule 1.16(d) requires that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled." Specifically, rule 1.16(d) states that "[t]he lawyer must provide, upon request, the client's file to the client."[18] The official comments clarify that "a lawyer shall provide ... the client's file to the client *notwithstanding any other law,*

*including attorney lien laws.*"[19] Further, the comments state that "[t]he Utah rule differs from the ABA Model Rule in requiring that papers and property considered to be part of the client's file be returned to the client *notwithstanding any other laws or fees or expenses owing to the lawyer.*"[20]

¶ 24 In spite of the clear language contained in rule 1.16(d) and the official comments to the rule, Mr. Brussow argues that he was justified in refusing to provide Ms. Langley with her file. Specifically, he argues that he did not violate the rule because (1) Ms. Langley engaged in fraudulent behavior and was therefore not entitled to her file, (2) he had an attorney's lien on the file, (3) he functionally provided Ms. Langley with her file by emailing her copies of his work as he performed it, and (4) he did not injure Ms. Langley by withholding the file. We reject each of these arguments.

¶ 25 First, Mr. Brussow claims that he was not required to give Ms. Langley her file because she engaged in fraudulent behavior. Specifically, he contends that Ms. Langley committed fraud by promising to pay for the transcripts of the depositions and then refusing to do so. Thus, Mr. Brussow argues that Ms. Langley was not entitled to receive her file and that his refusal to provide her with the file therefore did not violate rule 1.16(d).

■ ¶ 26 But Mr. Brussow misunderstands rule 1.16(d). In the context of the rule's requirement that attorneys "must provide, upon request, the client's file to the client," the rule's reference to the "papers ... to which the client is entitled" relates to the *type of materials* a client is entitled to receive. And the official comments to the rule clarify that a client is entitled to receive, as part of the client file, "all papers and property the client provides to the lawyer; litiga-

---

17. For instance, at the hearing before the Screening Panel, Mr. Brussow indicated that Ms. Langley still owed him payments for his services, and at the hearing before the Chair, he testified that Ms. Langley had "filed a verified petition to arbitrate [a] fee dispute, where she admitted she owed ... $25,500." Similarly, in his brief on appeal, Mr. Brussow argues that the docket entry sheets that he presented at the hearings before the Screening Panel and the Chair "tended to corroborate that extensive legal services were

rendered which at the $150 hourly billing rate totaled well in excess" of the amount that Ms. Langley claimed she had paid.

18. Utah R. Prof'l Conduct 1.16(d).

19. *Id.* cmt. 9 (emphasis added).

20. *Id.* (emphasis added).

tion materials such as pleadings, motions, discovery, and legal memoranda; all correspondence; depositions; expert opinions; business records; exhibits or potential evidence; and witness statements." [21] On the other hand, the client is *not* entitled to receive "the lawyer's work product such as recorded mental impressions; research notes; legal theories; internal memoranda; and unfiled pleadings." [22] In sum, rule 1.16(d) requires the attorney to surrender the documents that a client is entitled to receive, as opposed to other documents, which the attorney may have generated on behalf of the client but which the client is not entitled to receive. Thus, under rule 1.16(d), Mr. Brussow should have provided Ms. Langley with all the materials she was entitled to receive as part of her client file.

¶ 27 Second, Mr. Brussow claims that he retained Ms. Langley's file in order to assert a lien on the file to secure payments that he believes Ms. Langley owes him for a bill that he paid on her behalf. But the plain language of rule 1.16(d) does not allow attorneys to assert a lien on client files to secure payments from a client. [23] As discussed, rule 1.16(d) requires that an attorney "must provide, upon request, the client's file to the client." [24] And the official comments explicitly state that "[u]pon termination of representation, a lawyer shall provide, upon request, the client's file to the client notwithstanding any other law, including attorney lien laws" and "notwithstanding any ... fees or expenses owing to the lawyer." [25]

¶ 28 Further, in *Jones, Waldo, Holbrook & McDonough v. Dawson,* we criticized the practice of attorneys retaining client files to assert liens for unpaid fees. [26] Under a former version of the Utah Rules of Professional Conduct, we explained that, although the rules permitted an attorney to withdraw from representation for nonpayment after giving a client adequate warning, the rules required attorneys to take steps to protect clients' interests, including "surrendering papers and property to which the client is entitled." [27] Accordingly, we noted that the attorney in *Jones, Waldo, Holbrook & McDonough* "failed to protect [the client's] best interest when it refused to surrender her file in derogation of that rule." [28] We concluded by saying that "when disputes [regarding fees] ... arise, attorneys should settle them without resorting to ... retaining files to coerce payment." [29]

¶ 29 Although we did not categorically prohibit attorneys from asserting a lien against clients' files under any circumstances in *Jones, Waldo, Holbrook & McDonough,* the applicable rule in force at the time was rule 1.14(d), which provided that "[t]he lawyer may retain papers relating to the client to the extent permitted by other law." [30] The official comment similarly stated that "[t]he lawyer may retain papers as security for a fee only to the extent permitted by law." [31] This rule may have left open the possibility of an attorney retaining a client's file to

---

21. *Id.*

22. *Id.*

23. Section 38–2–7 of the Utah Code does recognize attorney liens. But even when it is permissible for an attorney to assert a lien against the money or property of a client, section 38–2–7 prescribes the proper procedure for enforcing a lien, and Mr. Brussow did not follow the requisite procedure. *See* Utah Code § 38–2–7(4); *id.* § 38–2–7(5); *id.* § 38–2–7(6). Further, section 38–2–7 does not list the client file as one of the types of money or property upon which an attorney may assert a lien for unpaid fees or expenses. *See id.* § 38–2–7(2). And to the extent that section 38–2–7 leaves open the possibility of a lien on a client file, the official comments to rule 1.16(d) make it clear that it is a violation of the Utah Rules of Professional Conduct to retain a client's file following a request from the client,

even if such a course of action would be permissible under section 38–2–7 of the Utah Code. Utah R. Prof'l Conduct 1.16(d) cmt. 9.

24. Utah R. Prof'l Conduct 1.16(d).

25. *Id.* cmt 9.

26. 923 P.2d 1366, 1375–76 (Utah 1996).

27. *Id.* at 1376 (internal quotation marks omitted).

28. *Id.*

29. *Id.*

30. Utah R. Prof'l Conduct 1.14(d) (1995).

31. *Id.* cmt.

assert a lien for unpaid fees. But rule 1.16(d) replaced the then-applicable rule 1.14(d), and as discussed, the language of rule 1.16(d) and its official comments expressly rejects such a possibility.[32]

¶ 30 Third, Mr. Brussow argues that he functionally provided Ms. Langley with her file by emailing her copies of his work as he performed it. This argument finds no support in the plain language of rule 1.16(d). Rule 1.16(d) states that the attorney "must provide ... the client's *file* to the client." [33] And, as mentioned previously, the official comments to rule 1.16(d) state that "the client file generally would include ... all papers and property the client provides the lawyer; litigation materials such as pleadings, motions, discovery, and legal memoranda; all correspondence; depositions; expert opinions; business records; exhibits or potential evidence; and witness statements." [34]

¶ 31 And although Mr. Brussow may have sent Ms. Langley copies of his work as he performed it, her client file likely contained more than the documents that he drafted, such as documents submitted by the opposing party in the proceeding, discovery materials, depositions, or witness statements. Further, Ms. Langley testified at the hearing before the Screening Panel that she and her new lawyer had to "try to catch up on what was going on without the file by getting copies of the court records." This testimony indicates that Ms. Langley did not have the information that she needed from her client file to move forward with her case. Thus, regardless of whether Mr. Brussow sent Ms. Langley copies of his work as he performed it, rule 116(d) required him to provide her file to her upon her request.

¶ 32 Finally, Mr. Brussow argues that his failure to provide Ms. Langley with her file did not injure her and that he therefore did not violate rule 1.16(d). But we do not consider whether the client has been injured by an attorney's failure to provide the file in determining if the rule has been violated. When Mr. Brussow failed to provide the file to Ms. Langley upon her request, he violated the rule, regardless of whether that failure injured her. In any case, as discussed below, we conclude that Ms. Langley was injured by Mr. Brussow's failure to provide her with her file.

¶ 33 In sum, rule 1.16(d) requires an attorney to provide a client with the client's file upon the client's request. Because Mr. Brussow did not provide Ms. Langley with her file when she requested it, we conclude that the Committee was correct in determining that Mr. Brussow violated rule 1.16(d).

## B. Because Mr. Brussow's Failure to Provide the File Harmed Ms. Langley, a Public Reprimand Was the Proper Sanction

¶ 34 As discussed above, the presumptive sanction for attorney misconduct depends on whether the attorney "cause[d] injury to a party, the public, or the legal system, or cause[d] interference with a legal proceeding." [35] Where the conduct has caused injury or interference with a legal proceeding, the presumptive sanction is a reprimand,[36] and where the conduct has not caused injury or interference with a legal proceeding, the proper presumptive sanction is an admonition.[37] Mr. Brussow argues that his failure to provide the file did not injure Ms. Langley or cause interference with a legal proceeding because there was no action pending in her

---

**32.** Mr. Brussow argues that courts in other jurisdictions have permitted attorney retaining liens on clients' files. *See Lucky–Goldstar Int'l (America) v. Int'l Mfg. Sales Co.,* 636 F.Supp. 1059, 1061–65 (N.D.Ill.1986); *Marsh, Day, & Calhoun v. Solomon,* 204 Conn. 639, 529 A.2d 702, 706 n. 4 (1987); *Vogelhut v. Kandel,* 66 Md.App. 170, 502 A.2d 1120, 1123–24 (Md.Ct.Spec.App.1986). But none of these cases interpret a professional rule or requirement with language similar to our rule 1.16(d). Thus, while other jurisdictions may permit an attorney to assert a lien on a client's file, rule 1.16(d) and its official comments make it clear that there is no exception to an attorney's duty to provide a client's file that would allow an

attorney to hold a retaining lien on the file for unpaid fees or expenses.

**33.** UTAH R. PROF'L CONDUCT 1.16(d) (emphasis added).

**34.** *Id.* cmt. 9.

**35.** SUP CT R. PROF'L PRACTICE 14–605(c)(1).

**36.** *Id.* 14–605(c).

**37.** *Id.* 14–605(d).

case at the time of her request. We reject this argument.

¶ 35 Although there may have been no action pending in her case, Ms. Langley may not have known this without access to her file. Further, because Mr. Brussow refused to provide her file, Ms. Langley had to pay her new attorney to draft a letter and obtain the file from Mr. Brussow. Indeed, Ms. Langley stated in her informal complaint that "without my file, my current attorney is duplicating the file by requesting documents directly from the [c]ourt," resulting in her "losing valuable time that should be spent on litigating my case, wasting money to have my attorney argue with Mr. Brussow on the ethics of returning the file, and wasting money on re-creating a copy from the Court files at an outrageous expense." Ms. Langley would not have spent money and time on her new attorney's attempt to re-create the file or retrieve the file from Mr. Brussow if he had provided the file to Ms. Langley when she requested it. Thus, because Mr. Brussow's violation of rule 1.16(d) injured Ms. Langley, a reprimand is the appropriate presumptive sanction.

 ¶ 36 On appeal, Mr. Brussow argues that we should consider mitigating circumstances that would warrant a lesser sanction than the presumptive sanction of a public reprimand.[38] On the other hand, the OPC asserts that there are aggravating circumstances that would justify a greater sanction. In accordance with our general preservation rule,[39] we decline to consider evidence of mitigating or aggravating circumstances that

was not presented before the Screening Panel.[40] "The two primary considerations underlying the [preservation] rule are judicial economy and fairness." [41] These policy considerations apply to our decision not to consider evidence of mitigating and aggravating circumstances for the first time on appeal.

 ¶ 37 First, requiring parties to present their evidence and arguments to the Screening Panel promotes judicial economy. "[A]ttorney discipline proceedings, being the exclusive province of this court, are conducted under the rules and directions we give." [42] Although we have the authority to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law," [43] under our court rules, it is the responsibility of the Screening Panel to make recommendations concerning whether attorneys should be disciplined for the conduct alleged in an informal complaint.[44]

¶ 38 Accordingly, our rules provide that "[i]nformal complaints shall be randomly assigned to screening panels," which "shall review, investigate, and hear all informal complaints charging unethical and/or unprofessional conduct against members of the Bar." [45] And after a "review, investigation, hearing and analysis, the screening panels shall determine the action to be taken on any informal complaint which, based upon the facts of the particular case, is most consistent with the public interest and the Rules of Professional Conduct." [46] Thus, it promotes judicial economy for the parties to bring their arguments and evidence be-

---

**38.** Mr. Brussow attempted to present evidence of mitigating circumstances for the first time at the exception hearing before the Chair. The Chair declined to consider Mr. Brussow's evidence and arguments regarding mitigating circumstances, stating that, because Mr. Brussow had not presented "the factual basis for these arguments to the Screening Panel ... [, he] may not properly do so for the first time at the [e]xception [h]earing."

**39.** *See Patterson v. Patterson*, 2011 UT 68, 112, 266 P.3d 828 ("We generally will not consider an issue unless it has been preserved for appeal.").

**40.** *Cf. In re Discipline of Stubbs*, 1999 UT 15, ¶ 29, 974 P.2d 296 (declining to consider an attorney's argument that the district court should have held a separate sanctions hearing because

he had not requested that the court hold such a hearing and he therefore "failed to preserve that issue for appellate review").

**41.** *Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828.

**42.** *In re Discipline of Harding*, 2004 UT 100, 118, 104 P.3d 1220.

**43.** Utah Const. art. VIII, § 4.

**44.** Sup Ct. R. Prof'l Practice 14–503(f).

**45.** *Id.*

**46.** *Id.*

fore the Screening Panel for its consideration when making its initial recommendation.

¶ 39 Second, requiring parties to present their evidence and arguments to the Screening Panel promotes fairness. Our rules provide that both the respondent and the complainant have the opportunity to appear before the Screening Panel, and during the hearing, they may testify, present witnesses, be present for the presentation of evidence, and seek responses from the other party to questions.[47] Because both the respondent and the complainant have the right to be present individually and participate during the hearing before the Screening Panel, such a hearing provides a fair setting to raise claims and present evidence. But on appeal, the respondent and the complainant may not have such opportunities. Thus, it promotes fairness to require parties to raise their arguments and present evidence in the first instance before the Screening Panel.

¶ 40 Accordingly, we do not consider evidence of mitigating and aggravating circumstances that was not brought before the Screening Panel, and we uphold the Committee's determination that a public reprimand is the appropriate sanction for Mr. Brussow's violation of rule 1.16(d).

## CONCLUSION

¶ 41 For the foregoing reasons, we affirm the Committee's conclusion that Mr. Brussow violated rule 1.15(d) by failing to provide Ms. Langley with an accounting of the fees she paid, and that he violated rule 1.16(d) by failing to provide Ms. Langley with her file. Because Mr. Brussow's failure to provide an accounting did not harm Ms. Langley, we conclude that the appropriate sanction for Mr. Brussow's violation of rule 1.15(d) was an admonition. But because Mr. Brussow's failure to provide the file did harm Ms. Langley, we affirm the Committee's conclusion that a public reprimand is the appropriate sanction for Mr. Brussow's violation of rule 1.16(d).

Chief Justice DURRANT authored the opinion of the Court, in which Associate

Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.