*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 15**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

IN THE MATTER OF THE DISCIPLINE OF CHARLES W. DAHLQUIST, II

OFFICE OF PROFESSIONAL CONDUCT,
*Appellant,*

*v.*

CHARLES W. DAHLQUIST, II,
*Appellee.*

No. 20170550
Filed April 30, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Andrew H. Stone
No. 160904532

Attorneys:

Billy L. Walker, Adam C. Bevis, Salt Lake City, for appellant

Michael F. Skolnick, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1　The Office of Professional Conduct (OPC) filed an attorney discipline case against Charles W. Dahlquist, II for repeatedly violating a judge's order *in limine* during a 2008 jury trial. No one present at the trial alerted the OPC to the conduct. Rather, the OPC learned of it from our opinion reversing the

jury's verdict and granting a new trial based in part on Dahlquist's violations of the order. *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 27, 289 P.3d 369 (stating that the "persistent and deliberate references to collateral source evidence in violation of the trial court's in limine order substantially prejudiced the jury").

¶2 The OPC immediately opened an investigation. But by this time, over three-and-a-half years had passed since the original trial. Nevertheless, the OPC proceeded with its investigation and communicated with the plaintiffs in the underlying case. The plaintiffs eventually filed an informal complaint with the Utah State Bar in 2015. After a hearing on the informal complaint before a screening panel of the Ethics and Discipline Committee, the OPC filed this case in the district court in 2016.

¶3 Dahlquist moved for summary judgment based on the statute of limitations, and the district court granted the motion. The OPC appeals, arguing that the district court misinterpreted what begins and ends the running of the limitations period.

¶4 Rule 14-529 of the Supreme Court Rules of Professional Practice governs this issue. It establishes a four-year limitations period for attorney discipline cases that begins to run upon the "discovery" of the alleged attorney misconduct and stops when "[p]roceedings under this article"[1] commence. The issues before us are: (1) whose "discovery" triggers the running of the limitations period and (2) what constitutes "proceedings under this article."

¶5 We hold that discovery by a party with an interest in filing an informal complaint under rule 14-510, as is the case here, is sufficient to start the running of the statute of limitations. And we interpret "proceedings" to mean the filing of an informal complaint under that rule.

¶6 Accordingly, we conclude that the district court correctly dismissed the complaint against Dahlquist as untimely, and we affirm.

---

[1] This refers to article 5 of chapter 14, Rules Governing the Utah State Bar, of the Rules of Professional Practice. Article 5 is titled "Lawyer Discipline and Disability."

**BACKGROUND**

¶7 Dahlquist represented IHC Hospitals, Inc. in a medical malpractice lawsuit filed against it by Jerome and Leilani Wilson. The jury trial took place from October 29 to November 21, 2008. Before trial, the Wilsons prevailed on a motion *in limine* to exclude evidence of collateral source benefits they had received. But during the trial, Dahlquist made repeated references to those benefits. *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 12, 289 P.3d 369.

¶8 The Wilsons moved for a new trial based in part on Dahlquist's conduct, but the trial court denied their request. The jury returned a verdict in favor of IHC, and the case was dismissed on December 9, 2008.

¶9 The Wilsons appealed the dismissal, based in part on Dahlquist's violations of the *in limine* order. In an opinion published on July 20, 2012, we agreed that IHC had "persistently and deliberately violated the trial court's order," and we granted the Wilsons a new trial. *Id.* at ¶ 2.

¶10 On the day the opinion was published, the OPC was notified of this court's decision and opened an investigation into Dahlquist's conduct. Over the course of its investigation, the OPC corresponded with the Wilsons' counsel.

¶11 On March 2, 2015, the Wilsons sent a letter to the OPC seeking to file a bar complaint against Dahlquist. That same month, they verified the letter in accordance with rule 14-510(a)(2) of the Rules of Professional Practice. The OPC consolidated the Wilsons' informal complaint with its pending investigation.

¶12 A screening panel of the Ethics and Discipline Committee of the Utah Supreme Court held a hearing on the informal complaint. The panel recommended that the OPC file a formal complaint against Dahlquist in district court. This case followed.

¶13 In the district court, Dahlquist filed a motion for summary judgment, arguing that the applicable four-year statute of limitations barred the OPC's complaint. The rule governing the limitations period in attorney discipline cases states: "Proceedings under this article shall be commenced within four years of the discovery of the acts allegedly constituting a violation of the Rules of Professional Conduct." SUP. CT. R. PROF'L PRACTICE 14-529.

¶14   The OPC argued that the statute of limitations should run from the time that it discovered Dahlquist's misconduct in July 2012—when this court issued its decision in *Wilson*. And the OPC argued that it commenced proceedings against Dahlquist when it opened its investigation the same day, which was within the four-year limitations period.

¶15   The district court disagreed. The district court reasoned that discovery by any person permitted to file an informal complaint for attorney discipline "will ordinarily be sufficient to trigger the limitations clock." Accordingly, the district court found that discovery of the alleged misconduct took place at the trial in 2008 because the Wilsons, their counsel, and others—any of whom could have filed an informal complaint—witnessed the misconduct. The district court also ruled that "proceedings" commenced when the Wilsons filed their informal complaint with the Utah State Bar in March 2015, not in July 2012 when the OPC opened its investigation.

¶16   The OPC appeals. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(c) and article VIII, section 4 of the Utah Constitution, which grants this court governance of the "discipline of persons admitted to practice law."

**STANDARD OF REVIEW**

¶17   Generally, we review the district court's interpretation of our Rules of Professional Practice for correctness. *In re Discipline of Welker*, 2004 UT 83, ¶ 11, 100 P.3d 1197. But because of our constitutional authority in attorney discipline cases, "we employ a unique standard of review." *In re Discipline of Barrett*, 2017 UT 10, ¶ 11, 391 P.3d 1031 (citation omitted). "We presume the district court's findings of facts to be correct 'unless they are arbitrary, capricious, or plainly in error,' but we . . . 'reserve the right to draw inferences from basic facts which may differ from the inferences drawn' by the district court." *Id.* (citation omitted).

**ANALYSIS**

¶18   In this case, we must interpret one of our own rules governing lawyer discipline. Rule 14-529 of the Rules of Professional Practice contains a four-year limitations period and reads, "Proceedings under this article shall be commenced within four years of the discovery of the acts allegedly constituting a violation of the Rules of Professional Conduct."

¶19   The parties disagree as to whose "discovery" starts the running of the limitations period and what constitutes the commencement of "[p]roceedings under this article." We turn first to the question of what begins the limitations period and then to the question of what ends it.

## I. "DISCOVERY"

¶20   The question of whose discovery starts the running of the four-year limitations period in rule 14-529 is not easily answered because the rule is entirely silent on the matter. It refers to "the discovery of the acts allegedly constituting a violation" but does not tell us whose discovery is contemplated. The relevant portion of the rule contains no subject.

¶21   The usual methods of statutory interpretation guide our analysis. "[W]e interpret a court rule in accordance with its plain meaning" with our objective being "to give effect to the intent of the body that promulgated it." *In re Discipline of Brussow*, 2012 UT 53, ¶ 14, 286 P.3d 1246 (citation omitted) (internal quotation marks omitted). Because this court is the body that promulgates these rules, the constitutional considerations that require us to take a purely textual approach to statutory enactments may not apply with equal force here.

¶22   The OPC argues that only its discovery of the alleged misconduct should trigger the running of the limitations period. In support, the OPC points to prior iterations of this rule. The predecessor to the Rules of Professional Practice was the Revised Rules of the Utah State Bar Governing Professional Conduct and Discipline, adopted in 1937. *See* Vol. XXII, Utah Bar Bulletin, November 1952 (stating that the Supreme Court approved the Revised Rules on March 1, 1937). Rule V(3) of the 1971 Revised Rules barred disciplinary action after three years "from the discovery by *the aggrieved party* of the facts upon which such action is based." Rules of Discipline of the Utah State Bar, Rule V(3) (1971) (emphasis added). By 1981, the rules changed to read that a complaint must be filed within four years from "the discovery by *the complainant* of the fact upon which the claim of unprofessional conduct is based." Rules of Discipline of the Utah State Bar, Rule XV (1981) (emphasis added).

¶23 The OPC claims that the removal of references to "the aggrieved party" and "the complainant" was intended to broaden the possible cases that could be brought to the OPC for

investigation and prosecution. But adopting the OPC's interpretation would effectively eliminate the statute of limitations for attorney discipline cases—a result inherently inconsistent with the title of rule 14-529 ("Statute of limitations") and the inclusion of a discovery provision in the text itself.

¶24 Further, it is unclear to us how removal of the actor in the rule serves to limit those whose discovery triggers the four-year period to only the OPC. Rather, it seems to do the opposite. While the rule once identified specific actors' discovery of the alleged misconduct as starting the limitations clock, it is now silent and seemingly open-ended on this question. Accordingly, we reject the OPC's interpretation because it adds words to the rule and would effectively eliminate the statute of limitations for attorney discipline cases.

¶25 On the other hand, the interpretation put forward by Dahlquist, and adopted by the district court, would allow discovery by *any* party to trigger the statute of limitations. The district court looked to rule 14-510, which outlines the procedures for prosecuting attorney misconduct. That rule states in part that a "disciplinary proceeding may be initiated against any member of the Bar by any person, OPC counsel or the Committee." SUP. CT. R. PROF'L PRACTICE 14-510(a)(1). In light of this language, the district court held:

> Because multiple parties may bring a complaint, discovery by any one of them will ordinarily be sufficient to trigger the limitations clock. . . . [T]he underlying actions were taken in open court, on the record in front of a judge, parties, counsel, and anyone else there to see.

Accordingly, the district court ruled that discovery under rule 14-529 occurred at the 2008 trial because the alleged misconduct occurred in open court, where many parties—whether they had an interest in filing a complaint or not—were present.

¶26 This interpretation is also problematic. Because the class of entities able to file a complaint is so broad under rule 14-510, almost anyone's discovery of the misconduct will start the clock, even if that person has little or no incentive to file a complaint.

This reading effectively turns rule 14-529 into a statute of repose,[2] leading to situations where attorney misconduct goes unreported for years before the OPC is informed and allowing attorneys to avoid disciplinary action.

¶27   We thus decline to adopt either interpretation in full. The OPC's interpretation is not supported by the language of the rule, and it is so narrow that in practice it would eliminate the statute of limitations. While more in line with the text of the rule, Dahlquist's interpretation is so broad that it transforms the statute of limitations into a statute of repose. Anyone's discovery of the conduct, even a person with no interest in filing a complaint, would trigger the running of the limitations period. Especially in the context of attorney misconduct, it is problematic to broaden the discovery rule to reach those who are not aggrieved and who may even have an incentive to stay silent.

¶28   Given the ambiguity in the language of rule 14-529, there are good policy reasons to modify it. But we think it best to do so through a prospective re-examination of the rule rather than by straining the bounds of its current language.

¶29   However, we are able to affirm the district court's decision on the facts of this case. Where misconduct is discovered by a party with an interest in filing an informal complaint, that is sufficient to start the running of the statute of limitations under the current version of the rule. The facts of this case do not implicate our concerns about over-expanding the discovery rule to reach those who are unaffected by the misconduct. The Wilsons had an interest in filing a bar complaint, as they were the party most aggrieved by Dahlquist's conduct. And they "discovered" his conduct during the trial because they witnessed it firsthand. But they did not file a bar complaint until after they were contacted by the OPC—years after the incident when the claim was already time-barred.

¶30   We therefore affirm the decision of the district court. Under rule 14-529, discovery in this case was triggered when the

---

   [2] A statute of repose is "[a] statute barring any suit that is brought after a specified time since the defendant acted . . . even if this period ends before the plaintiff has suffered a resulting injury." *Statute of Repose*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Wilsons learned of the alleged misconduct. Here, that was in 2008 at the time of the jury trial.

## II. "PROCEEDINGS UNDER THIS ARTICLE"

¶31 The OPC argues that the phrase "[p]roceedings under this article" in rule 14-529 encompasses OPC investigations—meaning that one manner in which proceedings can commence is by the OPC opening an investigation into alleged attorney misconduct. Under that reading, the OPC argues that proceedings in this case began when it opened its investigation of Dahlquist on July 20, 2012. The district court rejected this argument. And we agree that the language of rule 14-529 does not support the OPC's reading.

¶32 The term "[p]roceedings" is not defined in the Rules of Professional Practice. Accordingly, we look to the plain meaning of the word by considering both its dictionary definition as well as its appearance in legal corpora. *See Nemelka v. Ethics & Discipline Comm. of the Utah Supreme Court*, 2009 UT 33, ¶ 14, 212 P.3d 525.

¶33 The first definition of "proceeding" in *Black's Law Dictionary* is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014). The Rules of Professional Practice also regularly refer to a "disciplinary proceeding," which is defined as "[a]n action brought to reprimand, suspend, or expel a licensed professional or other person from a profession or other group because of unprofessional, unethical, improper, or illegal conduct." *Disciplinary Proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014). The definitions of "proceeding" and "disciplinary proceeding" both refer to an action or lawsuit. Neither an action nor a lawsuit traditionally encompasses an investigation, which happens before the commencement of both.

¶34 In addition to dictionary definitions, we can better understand the ordinary meaning of "proceeding" within the context of rule 14-529 by considering how it has actually been used in a given body of language. *See State v. Rasabout*, 2015 UT 72, ¶ 58, 356 P.3d 1258 (Lee, A.C.J., concurring). A legal database, such as Westlaw, is one such body of language that we find to be particularly illuminating in this case. *See id.* ¶ 63.

¶35 A survey of Utah disciplinary cases shows that "proceeding" is used in a manner consistent with the above definitions—referring to an action or lawsuit commenced by filing a complaint in some form rather than one triggered by an investigation.[3] And a broader search of all United States Supreme Court cases reveals that when the Court refers to "proceedings" being "commenced," the majority of the time the Court is speaking in terms of a legal proceeding commenced by the filing of a complaint or other legal document.[4]

¶36 "Proceeding" is also used in other parts of the Rules of Professional Practice.[5] Under the canon of consistent meaning, "where a word has a clear and definite meaning when used in one

---

[3] *See, e.g.*, *In re Discipline of Steffensen*, 2018 UT 53, ¶ 20, 428 P.3d 1104 (discussing "proceedings" before a district court); *Discipline of Gilbert v. Utah Down Syndrome Found., Inc.*, 2012 UT 81, ¶ 9, 301 P.3d 979 (stating that a "disciplinary proceeding" followed an "investigation and screening"); *In re Discipline of Trujillo*, 2001 UT 38, ¶ 19, 24 P.3d 972 ("[T]he OPC commenced a disciplinary proceeding . . . by filing a petition for [] interim suspension . . . .").

[4] Of the cases that use the terms "proceeding" and "commence" in the same sentence, roughly 90 percent refer to legal proceedings—such as "foreclosure proceedings," "proceedings by mandamus," or proceedings "commenced by filing a document"—and not merely an investigation.

[5] *See, e.g.*, SUP. CT. R. PROF'L PRACTICE 14-501(c) ("All disciplinary proceedings shall be conducted in accordance with this article and Article 6 . . . ."); *id.* 14-504(b)(4) (providing that the OPC has the power to "prosecute . . . all disciplinary cases and proceedings."); *id.* 14-506(d) ("Part-time judges, while in office, are subject to lawyer disciplinary and disability proceedings . . . ."); *id.* 14-511(c) ("All proceedings instituted by the OPC shall be styled 'In the Matter of the Discipline of (name of respondent and respondent's Bar number), Respondent.'"); *id.* 14-602(b)–(c) (describing the "[p]urpose of lawyer discipline proceedings" and the "[p]ublic nature of lawyer discipline proceedings"). Notably, the use of "proceedings" or "disciplinary proceedings" in the above rules suggest that a proceeding involves an attorney discipline case rather than an OPC investigation.

part of . . . a document, but not when used in another, the presumption is that the word is intended to have the same meaning in the latter as in the former." *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 72, 357 P.3d 992 (Durrant, C.J., concurring in part and dissenting in part) (alteration in original) (quoting ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012)).

¶37 Rule 14-510, a proximate rule in the procedures for prosecuting attorney discipline matters, states:

> A disciplinary proceeding may be initiated against any member of the Bar by any person, OPC counsel or the Committee, by filing with the Bar, in writing, an informal complaint in ordinary, plain and concise language setting forth the acts or omissions claimed to constitute unprofessional conduct. Upon filing, an informal complaint shall be processed in accordance with this article.

SUP. CT. R. PROF'L PRACTICE 14-510(a)(1).

¶38 Accordingly, a "proceeding," as used in rule 14-510, is commenced by the filing of an informal complaint. There is no indication that the term was intended to be used differently in rule 14-529, and thus we presume that "proceeding" has the same meaning in both rules.

¶39 The OPC argues that the use of the word "may" in rule 14-510 means that a proceeding can be commenced by means other than the filing of an informal complaint. To support its proposition, the OPC points to rule 14-504(b), which outlines the powers and duties of OPC counsel. That rule authorizes the OPC to screen information; conduct investigations; and dismiss, decline, or refer to our Ethics and Discipline Committee matters not covered by rule 14-510. Under this language, the OPC reasons that by opening an investigation of Dahlquist in July 2012, it was also commencing a proceeding under article 5—specifically, under rule 14-504(b).

¶40 But the language and structure of rules 14-504 and 14-510 give no indication that an OPC investigation initiates a "proceeding." And although the prosecutorial duties of the OPC, as contained in article 5, encompass more than filing an informal or formal complaint, that does not mean its other duties equate to beginning a proceeding. As the prosecutorial arm of the attorney

discipline system in Utah, this would be akin to state or federal prosecutors protecting potential charges from applicable statutes of limitation by simply questioning a suspect or investigating an accusation, without filing charges. As the district court aptly observed, "If merely subjectively opening an investigation were enough to satisfy that rule, there would be no real deadline for action at all . . . ."

¶41 Our case law supports the district court's reading. While we have acknowledged that an OPC investigation can occur before or after the start of a disciplinary proceeding, the event that "commences" or initiates the proceeding is the filing of a complaint, not the opening of an investigation. *See, e.g.*, *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 28, 86 P.3d 712 (providing that "disciplinary proceedings . . . 'may be initiated . . .' by filing an informal complaint . . . . Once an informal complaint is filed, OPC counsel is required to 'conduct a preliminary investigation . . . .'" (citations omitted)); *In re Discipline of Pendleton*, 2000 UT 77, ¶ 22, 11 P.3d 284 ("In the typical case, a disciplinary proceeding is initiated by the filing of an informal complaint with the OPC. After the informal complaint is filed, the OPC has the opportunity to conduct a preliminary investigation into the allegations of misconduct . . . ." (citation omitted)).

¶42 Reading rules 14-529 and 14-510 together, we hold that "[p]roceedings under this article . . . commence[]" when an informal complaint is filed with the Bar in accordance with rule 14-510(a)(1) and (a)(2). The dictionary definition and use of "proceeding" in the broader legal corpora support the district court's analysis that "the ordinary means of stopping the running of a statute of limitations is the filing of a complaint. That common understanding is perhaps the most sensible means of construing [rule] 14-529." Accordingly, we affirm the district court's ruling that proceedings against Dahlquist began in March 2015 when the Wilsons verified their informal complaint. This was over six years after the discovery of Dahlquist's misconduct and was barred by rule 14-529.

## CONCLUSION

¶43 We hold that, under rule 14-529, the limitations period was triggered when the Wilsons learned of the alleged misconduct. The limitations period stops running when any party, including the OPC, files an informal complaint with the Bar in accordance with rule 14-510. Here, this took place when the

Wilsons verified their informal complaint with the Bar. Because Dahlquist's misconduct was discovered in October and November 2008, and proceedings against him did not begin until March 2015, this case is barred by the statute of limitations. We affirm.

———————