2023 UT 17

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of:
AARON M. KINIKINI

OFFICE OF PROFESSIONAL CONDUCT,
*Appellant,*

*v.*

AARON M. KINIKINI,
*Appellee.*

No. 20220116
Heard October 3, 2022
Filed July 20, 2023

On Direct Appeal

Third District, Salt Lake County
The Honorable Laura Scott
No. 210904426

Attorneys:

Billy L. Walker, Emily A. Lee, Salt Lake City, for appellant

Todd Wahlquist, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE HAGEN, JUSTICE
POHLMAN, and JUDGE RENSTROM joined.

Having recused himself, CHIEF JUSTICE DURRANT does not
participate herein; DISTRICT COURT JUDGE REUBEN J. RENSTROM sat.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 When a lawyer commits a crime, the lawyer faces criminal prosecution and punishment just as anyone else would in the same circumstance. But in addition to that, a lawyer faces professional discipline if the criminal act "reflects adversely on

the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects." UTAH R. PRO. CONDUCT 8.4(b). For example, depending on the relevant factual circumstances, the ultimate sanction in such a professional disciplinary proceeding could include suspension of the lawyer's license for a period of time or full delicensure. SUP. CT. R. PRO. PRAC. 11-584(a); *id.* R. 11-583 (2020).[1]

¶2 Where the lawyer's guilt has already been determined in a criminal case—either through a guilty plea or jury verdict—this court's Rules of Professional Practice direct that the lawyer is subject to immediate interim suspension from the practice of law if the crime of conviction is "a felony or misdemeanor that reflects adversely on the [lawyer's] honesty, trustworthiness, or fitness to practice law." *Id.* R. 11-564(c).

¶3 This appeal raises the question of how a district court should determine whether a crime reflects adversely on a lawyer's fitness to practice law when ruling upon a motion for interim suspension. This case involves a lawyer, Aaron Kinikini, who pled guilty to felony discharge of a firearm. Upon learning of the conviction, the Office of Professional Conduct (OPC) moved in the district court for Kinikini's immediate interim suspension. The OPC did not deem the offense to implicate his honesty or trustworthiness. Rather, it argued that interim suspension was required because the conviction of felony discharge of a firearm reflected adversely on Kinikini's fitness to practice law, since it is a crime of violence. The OPC's argument was premised on the elements of the offense.

¶4 Kinikini opposed the motion, arguing that it was insufficient for the district court to look only at the elements of the crime as a legal matter. He asserted that the district court must look at the specific factual circumstances of his criminal conduct and determine whether his actual conduct reflected adversely on his fitness to practice law.

¶5 The district court denied the OPC's motion to place Kinikini on interim suspension. It concluded that the OPC was

---

[1] Rule 11-584(a) went into effect on November 1, 2022, after oral argument was held in this case. We cite the new rule only to demonstrate generally the potential sanctions when a lawyer is convicted of a crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law.

required to show that Kinikini's actual criminal conduct reflected adversely on his fitness to practice law. And because the OPC had not provided any such information, the court denied its motion. The OPC appeals.

¶6 We hold that the determination of whether a lawyer's crime of conviction falls within one of the categories requiring interim suspension—in that it reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law—is a legal question about the nature of the crime. A district court should make this determination based on the elements of the offense, not the particular factual circumstances of the respondent's criminal conduct. This is so because in a proceeding for interim suspension under rule 11-564 of the Supreme Court Rules of Professional Practice, it has necessarily already been determined in a separate criminal proceeding that the respondent committed the crime—in other words, that the lawyer's conduct satisfied the elements of the criminal offense. And where the elements of the crime of conviction implicate the lawyer's honesty, trustworthiness, or fitness to practice law, it damages the legal profession for the lawyer to continue practicing law, even as the ultimate professional sanction against the lawyer is being determined.

¶7 We reverse and remand for the district court to reconsider the OPC's motion in accordance with this opinion.

## BACKGROUND

¶8 Aaron Kinikini, a lawyer, pled guilty to discharge of a firearm, which is a third-degree felony. As explained in his plea statement, "On December 18, 2020, in Salt Lake County, Mr. Kinikini discharged a firearm, striking the driver's side tires of a vehicle that his ex-wife was operating. He had reason to believe that this could have endangered her or the other occupants of the car." The elements of the crime listed in Kinikini's plea statement were: "Defendant did[,] [while] knowing or having reason to believe any person may be endangered by the discharge of a firearm, discharge a firearm in the direction of another person (a cohabitant)." *See* UTAH CODE § 76-10-508.1(1)(a) (2019) ("[A]n individual who discharges a firearm is guilty of a third degree felony . . . if: . . . the actor discharges a firearm in the direction of one or more individuals, knowing or having reason to believe that any individual may be endangered by the discharge of the firearm . . . .").

¶9 After learning of Kinikini's plea, the OPC filed a complaint against him in the district court. It alleged that Kinikini

had violated rule 8.4(b) of the Utah Rules of Professional Conduct, which provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects." UTAH R. PRO. CONDUCT 8.4(b).

¶10  Simultaneously, the OPC moved under rule 11-564 of the Supreme Court Rules of Professional Practice for Kinikini to be immediately suspended from the practice of law during the pendency of the action in the district court.[2] Rule 11-564 requires a district court to place an attorney on interim suspension "upon proof that the [attorney] has been found guilty of or has entered a plea to a felony or misdemeanor that reflects adversely on the [attorney's] honesty, trustworthiness, or fitness to practice law." SUP. CT. R. PRO. PRAC. 11-564(c). The OPC did not assert that Kinikini's criminal conduct reflected adversely on his honesty or trustworthiness. So the only issue before the district court was whether his conviction reflected adversely on his fitness to practice law.

¶11  The OPC argued that to make this determination, the court should look only at the elements of the crime and not the factual circumstances surrounding Kinikini's criminal conduct. In the OPC's view, "evidence of aggravation and mitigation (such as restitution) are factors to be considered when determining the ultimate sanction and should not be considered when determining whether an interim suspension should be imposed." The OPC also argued that crimes of violence categorically reflect adversely on an attorney's fitness to practice law. To support this argument, the OPC cited comment 2 of rule 8.4 of the Utah Rules of Professional Conduct, which states, "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust or serious interference with

---

[2] The OPC's motion was also premised on a separate criminal incident in 2008, in which Kinikini pled guilty to two misdemeanors. However, the district court determined that the 2008 conduct occurred outside the statute of limitations and "the conduct that led to the 2008 conviction, standing alone, [did] not warrant immediate suspension." Neither party appealed that portion of the district court's order, and we do not address it here.

the administration of justice are in that category." UTAH R. PRO. CONDUCT 8.4 cmt. 2.

¶12 Kinikini opposed the motion and requested an informal hearing, as permitted by rule 11-564(b). He asserted that for the informal hearing to be meaningful, the district court must do more than analyze the elements of the offense. He argued that the court should consider his actual offense conduct. And he asserted that, looking at his specific criminal conduct, the court should not temporarily suspend him unless it determined that his continued practice would pose a threat of harm to others or that the factors that courts consider when determining the ultimate sanction in disciplinary proceedings weighed in favor of a suspension. Those factors are: "(a) the duty violated; (b) the Lawyer's mental state; (c) the potential or actual injury caused by the Lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." SUP. CT. R. PRO. PRAC. 11-582 (2020).[3] Kinikini asserted that failure to consider the factual circumstances of his offense "would be a serious violation of [his] right to due process."

¶13 The district court shared Kinikini's concern that he would be deprived of due process if the court suspended his license without considering the circumstances of his conduct. Accordingly, because the OPC had presented no evidence regarding the factual circumstances of Kinikini's offense, the district court declined to make a finding regarding whether Kinikini's conviction implicated his fitness to practice law. And it denied the OPC's motion for interim suspension.

¶14 The OPC appeals. We have jurisdiction under Utah Code section 78A-3-102(3)(c).

**STANDARD OF REVIEW**

¶15 The Utah Constitution gives this court "explicit and exclusive" power to govern the practice of law. *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, ¶ 14, 374 P.3d 14; UTAH CONST. art. VIII, § 4. This constitutional power includes the authority to govern attorney disciplinary proceedings. UTAH CONST. art. VIII, § 4 ("The Supreme Court by rule shall govern the practice of law,

---

[3] Rule 11-582 was amended on November 1, 2022. However, we refer to the 2020 version of this rule here, because it was that version that Kinikini referenced in his argument to the district court and in his briefing to us, as that was the version in effect at the time.

including . . . the conduct and discipline of persons admitted to practice law."). To do this, we have promulgated the Supreme Court Rules of Professional Practice. We review a district court's interpretation of those rules for correctness. *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 12, 86 P.3d 712.

## ANALYSIS

¶16  The OPC argues that the district court incorrectly denied its motion for interim suspension. It asserts that rule 11-564 of the Supreme Court Rules of Professional Practice directs a court to consider only the elements of the crime itself when determining whether that crime reflects adversely on an attorney's honesty, trustworthiness, or fitness to practice law. And the OPC reasons that, in requiring it to provide additional evidence of Kinikini's specific conduct, the court misapplied the rule.

¶17  Kinikini asserts that the OPC reads the rule incorrectly. And he argues that the OPC's interpretation raises due process concerns because it denies him a meaningful opportunity to be heard.

¶18  We first explain why the OPC's reading of the rule is correct. We then address the due process concerns that Kinikini raises.

## I. RULE 11-564 DIRECTS A DISTRICT COURT TO DETERMINE, AS A MATTER OF LAW, WHETHER THE CRIME OF CONVICTION WARRANTS INTERIM SUSPENSION

¶19  To determine the meaning of rule 11-564, we first look to the text of the rule itself. Our analysis begins by "interpret[ing] [the] court rule in accordance with its plain meaning" and seeking "to give effect to the intent of the body that promulgated it." *In re Discipline of Brussow*, 2012 UT 53, ¶ 14, 286 P.3d 1246 (cleaned up). However, "[b]ecause this court is the body that promulgate[d] these rules, the constitutional considerations that require us to take a purely textual approach to statutory enactments may not apply with equal force here." *In re Discipline of Dahlquist*, 2019 UT 15, ¶ 21, 443 P.3d 1205.

¶20 Broadly speaking, rule 11-564 lays out a process to address the specific circumstance where an attorney has been convicted of a crime. First, if a lawyer is convicted of any crime, other than "misdemeanor traffic offenses or traffic ordinance violations not involving the use of alcohol or drugs," both the lawyer and the criminal court must notify the OPC. SUP. CT. R. PRO. PRAC. 11-564(a).

¶21 Upon learning that a lawyer has been convicted of "a felony or misdemeanor that reflects adversely on the [lawyer's] honesty, trustworthiness, or fitness to practice law," *id.* R. 11-564(b), the "OPC must determine whether the crime warrants interim suspension." *Id.* If it determines that it does, the OPC "must file an Action" in the district court and "concurrently file a motion for immediate interim suspension."[4] *Id.*

¶22 Notably, this is different from the process for most other disciplinary proceedings against lawyers. Most often, a disciplinary proceeding against a lawyer commences because a complaint is filed with the OPC alleging that the lawyer has engaged in unprofessional conduct. *See id.* R. 11-530. At that point, the factual circumstances of the complaint have not been determined, nor has it been determined whether those facts provide grounds to discipline the lawyer under rule 11-560. *See id.* R. 11-560. To make such determinations, the Supreme Court Rules of Professional Practice establish a process for screening panels to investigate and review complaints. *Id.* R. 11-531–534. The panels then recommend how the complaint should be handled, including appropriate sanctions. *Id.* R. 11-534. If the screening panel "finds probable cause to believe there are grounds for public discipline that merit filing an Action," then "the OPC will file an Action in district court." *Id.* R. 11-536(a).

¶23 But in a circumstance like the one here, the fact that the lawyer has been convicted of a crime itself constitutes professional misconduct warranting discipline, if the crime is of a certain type. *See* UTAH R. PRO. CONDUCT 8.4(b); SUP. CT. R. PRO. PRAC. 11-564(a). And the fact that the lawyer committed a crime has already been established in a criminal proceeding. SUP. CT. R. PRO. PRAC. R. 11-564(e) ("[D]ocumentation that the [lawyer] has been found guilty of or has entered a plea to a crime constitutes conclusive evidence that the [lawyer] committed the crime."). So, unlike in other disciplinary proceedings, the facts relevant to whether discipline is warranted have already been established—specifically, the lawyer committed a crime. And all that remains is to determine whether the conviction provides grounds to discipline the lawyer,

_____

[4] As defined by rule 11-502, "'Action' means a lawsuit filed by the OPC in district court alleging Lawyer misconduct or seeking to transfer a Lawyer to disability status." SUP. CT. R. PRO. PRAC. 11-502(a).

which is the case if the crime of conviction "reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects." UTAH R. PRO. CONDUCT 8.4(b). And that is a legal question.[5]

¶24 Accordingly, when an attorney has been convicted of a crime that the OPC concludes falls within the ambit of rule 11-564, the case does not go through the screening panel process. Rather, the OPC goes straight to the district court, where it commences an action and simultaneously moves for interim suspension. SUP. CT. R. PRO. PRAC. 11-564(b).

¶25 Although the fact of a criminal conviction has already been established, there is still a necessary determination to be made in the district court before interim suspension—or discipline—can be imposed. That is the legal question of whether the crime of conviction warrants interim suspension because it falls within one of the categories identified in rule 11-564—and subsequently, the related question of whether the crime constitutes attorney misconduct warranting professional discipline because it falls within the similar categories identified in rule 8.4(b) of the Rules of Professional Conduct.

¶26 Because of the narrow issue remaining, rule 11-564 limits the manner and substance of the challenges that a lawyer may raise in opposing interim suspension. The attorney "may assert any jurisdictional deficiency establishing that the interim suspension may not properly be ordered," which the rule identifies as defenses such as mistaken identity or that the crime does not fall within one of the categories identified in the rule. *Id.* R. 11-564(b). Importantly, this list does not encompass factual challenges to the propriety of a suspension based upon the specific circumstances of the criminal conduct.

¶27 Indeed, rule 11-564(b) explicitly provides that the attorney is "not entitled to an evidentiary hearing." *Id.* The respondent may request only an "informal hearing." *Id.* And the rule limits the scope of that hearing, stating that it is "solely to determine whether the finding of guilt or plea was for a felony or

---

[5] Additional facts may be adduced and considered when it comes time to determine an appropriate sanction. But here we are discussing only the facts relevant to determining whether discipline should be imposed in the first instance.

misdemeanor that reflects adversely on the [lawyer's] honesty, trustworthiness, or fitness to practice law." *Id.*

¶28 We conclude that the plain language of the rule shows that the question of whether the crime of conviction reflects adversely on a lawyer's fitness to practice law (or honesty or trustworthiness) is a legal question regarding the nature of the crime itself. A district court should make this determination based on the elements of the crime of conviction.

¶29 Once it has been shown that the lawyer has been convicted of the crime, *see id.* R. 11-564(e), and the district court has determined that the crime falls within one of the categories identified in rule 11-564, the court must place the lawyer on interim suspension. *Id.* R. 11-564(c). Conversely, if the court denies the motion, "the OPC must dismiss the Action and will process the matter as it does any other information coming to the OPC's attention." *Id.* R. 11-564(b).

¶30 We now address Kinikini's arguments that the rule required the district court to analyze his specific offense conduct to determine whether that conduct—and not the legal nature of the crime of felony discharge of a firearm—reflected adversely on his fitness to practice law.

¶31 We reject Kinikini's argument first because it conflicts with the language of rule 11-564. His reading would require the district court to receive evidence in order to develop the factual circumstances of Kinikini's criminal conduct. But the rule explicitly precludes an evidentiary hearing. *Id.*

¶32 Further, Kinikini's interpretation of the rule would permit him to argue that his specific conduct does not reflect adversely on his fitness to practice law. But such factual argumentation far exceeds the defenses the rule allows him to raise. *Id.*

¶33 In support of his argument that the district court should conduct a factual analysis of the circumstances of the crime, Kinikini looks outside of rule 11-564 and draws upon two other rules that he contends must be harmonized with it. First, he notes that "interim suspension" is considered a "sanction" because it is included in rule 11-581, which identifies the available sanctions in

disciplinary proceedings.[6] *Id.* R. 11-581(d) (2020). Kinikini then asserts that before imposing a "sanction," a court must consider the factors listed in rule 11-582: "(a) the duty violated; (b) the Lawyer's mental state; (c) the potential or actual injury caused by the Lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* R. 11-582 (2020). Thus, Kinikini reasons, before imposing the "sanction" of interim suspension, the court must consider the rule 11-582 factors. And to do this, the court must consider the factual circumstances of the offense.

¶34 We reject this argument, however, because rule 11-581 specifically directs that interim suspension "may be imposed as set forth in [rule] . . . 11-564." *Id.* R. 11-581(d) (2020). This statement renders the factors in rule 11-582 inapplicable at this stage of the proceedings because rule 11-581 directs courts back to rule 11-564 when considering whether to impose an interim suspension. Importantly, a district court may consider any of the relevant factors in rule 11-582 at the time it determines the ultimate sanction in this type of case—but that comes later, not while the court is addressing the propriety of an interim suspension.

¶35 Further, if a district court were to consider the factors in 11-582, that would necessitate an evidentiary hearing during which the facts of the criminal conduct were adduced. And since the text of 11-564 expressly states that a lawyer is not entitled to an evidentiary hearing, *id.* R. 11-564(b), Kinikini's interpretation creates a conflict between rules 11-564 and 11-582.

¶36 Kinikini next argues that a district court should not impose an interim suspension without first considering whether an attorney's continued practice would pose a threat of harm. As there is no explicit mention of threat of harm in rule 11-564, Kinikini argues that consideration of a threat of harm is implicit in the rule and "a finding that an attorney does not pose a threat is essentially a finding the attorney is fit to practice."

¶37 But this conflates rule 11-564 with a separate rule, rule 11-563, which explicitly addresses circumstances in which interim suspension is necessary to protect the public from a threat of harm posed by an attorney's continued practice of law. *Id.* R. 11-563(a),

---

[6] Rule 11-581 was amended on November 1, 2022. We refer to the 2020 version of the rule because that is the rule Kinikini relies upon in his argument. *See supra* ¶ 12 n.3.

(b) (requiring the OPC to file a petition for interim discipline when an attorney "poses a threat of serious harm to the public" and allowing the district court to "enter an order immediately suspending" the attorney).

¶38 We decline to read a threat-of-harm requirement into rule 11-564 when those words do not appear in the rule. Rule 11-564 provides its own basis for interim suspension, which is separate and distinct from the rationale behind rule 11-563. Rule 11-564 reflects this court's judgment that when a lawyer has been convicted of a crime that adversely reflects on their honesty, trustworthiness, or fitness to practice law, it damages the profession for that attorney to continue practicing as a lawyer while a disciplinary proceeding is pending. And where a crime involves violence, as the OPC argues is the case with felony discharge of a firearm, it impugns the lawyer's fitness to practice law because the lawyer has engaged in conduct that endangered the physical safety of others.

¶39 In sum, rule 11-564 requires district courts to determine, as a matter of law, whether the crime of conviction reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law based on the elements of the offense. This is a categorical finding that does not take into account the factual circumstances surrounding the particular criminal conduct at issue. Where a lawyer has been convicted of a crime, it necessarily has been determined that the lawyer's conduct fell within the elements of the offense of conviction. Accordingly, the district court should determine whether the elements of the crime of conviction implicate rule 11-564.

## II. RULE 11-564 PROVIDES A RESPONDENT WITH A MEANINGFUL OPPORTUNITY TO BE HEARD ON THE MATTERS THAT ARE AT ISSUE

¶40 Kinikini next contends that the OPC's interpretation of rule 11-564 raises due process concerns. To be clear, Kinikini does not argue that the rule is unconstitutional because it violates his right to due process. Instead, he argues that we should adopt his interpretation of the rule over the OPC's because the OPC's interpretation gives rise to due process concerns. Specifically, he asserts that the OPC's reading of the rule "remove[s] any 'meaningfulness' from the [informal] hearing to which Mr. Kinikini is entitled under the rule."

¶41 This argument is a form of statutory construction. When faced with "two plausible constructions of a statute," the canon of

constitutional avoidance allows courts to reject one construction "on the ground that it would raise grave doubts as to the statute's constitutionality." *Castro v. Lemus*, 2019 UT 71, ¶ 54, 456 P.3d 750 (cleaned up). But in light of the rule's explicit prohibition on evidentiary hearings, we cannot conclude that Kinikini has offered an alternative, plausible interpretation of the rule. And as Kinikini has not otherwise argued that the rule is unconstitutional, his due process argument fails.

¶42 We appreciate the district court's attention to ensuring that Kinikini had a sufficient opportunity to be heard in this proceeding. And we reaffirm that, just like parties in other types of cases, lawyers are entitled to a "meaningful opportunity to be heard" in attorney discipline cases. *In re Discipline of Steffensen*, 2016 UT 18, ¶ 7, 373 P.3d 186. This remains true in interim suspension proceedings under rule 11-564. However, these cases proceed differently than other disciplinary actions because much of the process the lawyer is due has already taken place in a prior criminal proceeding. *See* SUP. CT. R. PRO. PRAC. 11-564(b) (noting that the rule applies where an attorney has already been "found guilty of or has entered a plea of guilty or no contest" to certain crimes).

¶43 This circumstance is similar to others in which a criminal conviction results in a collateral consequence outside of the criminal proceeding. For example, the United States Code has an analogous provision that requires any federal law enforcement officer to be removed from employment if they are convicted of a felony. 5 U.S.C. § 7371(b). Like rule 11-564, section 7371 limits the manner and substance of how employees may challenge their removal. Under section 7371, employees may contest their removal only with respect to whether "(A) the employee is a law enforcement officer; (B) the employee was convicted of a felony; or (C) the conviction was overturned on appeal." *Id.* § 7371(e)(2).

¶44 In these circumstances, the policy behind the disciplinary rule is that the fact of the criminal conviction itself warrants the professional sanction. In the context of rule 11-564, once the fact of conviction has been established, the only remaining question is a legal one as to whether the crime of conviction falls within the ambit of the rule. Because this is a legal question, the process available to a respondent under 11-564 is generally limited to legal rather than factual challenges. This provides a respondent with a meaningful opportunity to be heard on those matters that are at issue in the proceeding at hand.

**CONCLUSION**

¶45 When the OPC brings a motion for interim suspension under rule 11-564, it must establish the fact of conviction and that the crime of conviction falls within the rule in that it reflects adversely on the attorney's honesty, trustworthiness, or fitness to practice law. This is a legal question that should be determined based on the elements of the crime of conviction. Accordingly, we reverse and remand to the district court to reconsider the OPC's motion in accordance with this opinion.

————————